# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DERRICK WAYNE HUNT,** <br> **TDCJ No. 01817959,** | § <br> § <br> § | |
| Petitioner, | § <br> § | |
| v. | § <br> § | **CIVIL NO. SA-17-CA-0986-XR** |
| **LORIE DAVIS, Director,** <br> **Texas Department of Criminal Justice,** <br> **Correctional Institutions Division,** | § <br> § <br> § <br> § <br> § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Derrick Hunt's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Answer (ECF No. 7), Petitioner's Amended Petition (ECF No. 11), and his Reply (ECF No. 14).[1] Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

### I. Background

In October of 2012, a Bexar County jury found Petitioner guilty on one count of capital murder, and he was sentenced to life imprisonment without parole. The facts presented at trial were accurately summarized by the Fourth Court of Appeals in his direct appeal:

> In the early morning hours of October 10, 2011, John Dexter, a taxi driver in San Antonio, was dispatched to Foss Meadows Drive. Dexter activated his meter at 3:48 A.M. At 4:03 A.M., Dexter stopped at a nearby convenience store and purchased a pack of gum with a twenty dollar bill and received $19.62 in change. On his way out of the store, Dexter encountered San Antonio Police

---

[1] Petitioner has paid the applicable filing fee for this cause. (ECF No. 3).

Department Officer James Phelan, who was taking a break. Dexter told Officer Phelan that he believed his current customer would not pay the fare. Officer Phelan offered to speak with the customer, but Dexter declined, stating that he would call the police if the fare was not paid. Officer Phelan observed a black male sitting in the back seat of the taxi before Dexter left and drove away . . .

Several minutes later, Daniel Solis was sleeping in his home on Sunrise Pass when he was awakened by five to six loud banging noises. He looked out his front window and observed Dexter's taxi in the street with the engine running. After several minutes, the taxi slowly moved forward and collided with the back of a parked vehicle. Solis went outside to investigate and found Dexter sitting in the driver's seat, bleeding. Solis opened the driver's door, placed the taxi in park, and called 911. Officer Phelan, the first officer to respond to the scene, arrived at 4:15 A.M. He encountered Solis standing in the street and observed Dexter unconscious in the driver's seat, still restrained by his seatbelt. Officer Phelan observed that Dexter had been shot several times and had no pulse. The medical examiner later determined that Dexter was shot six times in his head and upper body. The medical examiner testified that the bullets were fired from behind Dexter at an intermediate close range. Spent shell casings and bullet fragments found at the crime scene were consistent with bullets fired from a semi-automatic handgun. No money was found at the crime scene, except for sixty-two cents found in Dexter's pocket.

Police investigators subsequently discovered footprints in the mud consistent with someone traveling [a]way from the taxi, through a fenced backyard, and toward the street neighboring Sunrise Pass. The taxi company provided a recording of the phone call placed by Dexter's final customer requesting taxi service from Foss Meadows Drive. On the recording, the caller identified himself as "Tyrone Callahan." Police eventually tracked the phone number of the caller to a cell phone registered to Marsheila Williams and used by her son, Carnel Walker.

Walker testified that he and several friends, including Hunt, went to a nightclub on the night of October 9, 2011. . . . Several hours later, Savawn Kyle gave Hunt and Terrance Scott a ride to Scott's home. Upon arriving at Scott's home, Hunt asked Kyle to take him to Walker's home. . . . Kyle . . . dropped Hunt off at Walker's home. Hunt knocked on the front door and spoke with Walker in the front yard. Walker refused to allow Hunt to sleep at his house because Walker's mother had a policy prohibiting overnight guests. Walker gave Hunt the phone number for a taxi and allowed Hunt to use his cell phone. Walker testified that Hunt called for a taxi using the name "Tyrone." Before the taxi arrived, Walker went back inside to sleep, but instructed Hunt to leave his cell phone inside and lock the door behind him.

The next morning, police contacted Williams and asked her come to the police station to discuss a homicide investigation. Williams relayed this information to Walker and then went to the police station. While she was away, Walker buried his cell phone in a neighbor's backyard. Walker subsequently consented to an interview with police detectives and told them that Hunt called him after leaving his house and stated that he had killed someone. Walker also told police that he observed that Hunt had a black semi-automatic handgun on the morning of the murder. At trial, Walker remembered telling police the information, but could no longer recall whether the information was true. Walker subsequently led police to his buried cell phone. He testified that he buried the phone because he was scared after learning that his mother was being questioned regarding a homicide.

Hunt's grandparents' home is located on the street behind Sunrise Pass, the site of the murder. Hunt's grandfather, William Bell, told police that Hunt knocked on his door during the 4:00 A.M. hour on October 10, 2011. Bell allowed Hunt into the house where he went to sleep. Bell testified that at the time, he heard police sirens and a helicopter and could see flashing emergency lights on the neighboring street. Bell subsequently allowed investigators to search Hunt's room, but they found nothing connecting Hunt to the crime scene. Police did, however, recover a latent fingerprint on the exterior of the taxi matching Hunt's fingerprint. Hunt consented to an interview with police, but denied that he had been in a taxi on the morning of the murder, claiming that he had received a ride home from his girlfriend, Raquel Fumbanks. During the interview, investigators asked Hunt to pronounce several street names, including "Callaghan." Immediately thereafter, Hunt requested to terminate the interview. At trial, Fumbanks denied that she ever gave Hunt a ride home. After listening to the recording of the phone call requesting taxi service, she identified the voice of "Tyrone Calla[g]han" as that of Hunt.

*Hunt v. State*, No. 04-12-00689-CR, 2014 WL 2443812, at *1-2 (Tex. App.—San Antonio 2014, pet. ref'd). Petitioner did not testify at his trial.

Petitioner's conviction and sentence were affirmed on direct appeal, and the Texas Court of Criminal Appeals refused his petition for discretionary review on November 5, 2014. *Hunt v. State*, No. PD-0787-14 (ECF No. 8-9). Petitioner sought a state writ of habeas corpus, alleging he was denied the effective assistance of trial and appellate counsel. The state trial court made findings of fact and conclusions of law, and recommended the writ be denied. (ECF No. 9-18 at

162-188 & ECF No. 9-19 at 1-16). The Court of Criminal Appeals denied the writ on the findings of the trial court. (ECF No. 9-7).

Petitioner signed the instant federal petition on September 28, 2017. (ECF No. 1 at 10). In his Amended Petition, Petitioner asserts he was denied the effective assistance of trial and appellate counsel. Respondent allows the petition is timely and asserts one of Petitioner's claims is procedurally barred. (ECF No. 7 at 2).

## II. **Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA, codified at 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21

4

(2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion. *Richter*, 562 U.S. at 102. Instead, a petitioner must show the state court's decision was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). As long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. <u>Merits Analysis</u>

In his Amended Petition, Petitioner asserts he is entitled to habeas relief because he was denied the effective assistance of trial and appellate counsel. Specifically, Petitioner argues counsel was ineffective for: (1) failing to elicit testimony that he made an exculpatory statement to a witness; (2) failing to object to the admission of receipts from the convenience store; and (3) failing to object to the narration of the convenience store surveillance video by Officer Phelan. Petitioner further asserts he was denied effective assistance of counsel because his appellate counsel failed to raise a claim regarding the sufficiency of the evidence.[2] The Court of Criminal

---

[2] The Amended Petition does not refer to or adopt or incorporate by reference any portion of the initial petition and, accordingly, the Court analyzes only on the claims stated in the Amended Petition. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

5

Appeals rejected Petitioner's ineffective assistance of counsel claims when raised in his state habeas action. As discussed below, Petitioner fails to demonstrate the state court's rejection of the claims was contrary to, or an unreasonable application of, Supreme Court precedent. Federal habeas relief is therefore denied on each claim.

**A. The *Strickland* Standard of Review**

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates counsel's performance was deficient and the deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

In determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland*, 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). As the Supreme Court explained, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not

be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As the Supreme Court explained: "*Strickland* asks whether it is 'reasonably likely' the result would have been different. This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Richter*, 562 U.S. at 111-12. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. Because this showing of prejudice must be "rather appreciable," a mere allegation of prejudice or the possibility of a different outcome is not sufficient to satisfy the prejudice prong of *Strickland*. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994); *see also Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).

A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008). A *Strickland* claim fails if the petitioner cannot establish *either* deficient performance or prejudice and, accordingly, the Court need not evaluate both prongs of the test if the petitioner makes an insufficient showing as to either performance or prejudice. *Strickland*,

7

466 U.S. at 697; *Blanton*, 543 F.3d at 235-36. Finally, ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).

## B. Exculpatory Statement (Claim 1)

Petitioner's first claim alleges counsel was ineffective for failing to elicit testimony from Mr. Walker that Petitioner made an exculpatory statement to Mr. Walker. Petitioner asserts the State elicited testimony that Petitioner told Mr. Walker "I killed him," but defense counsel did not elicit testimony that Petitioner told Mr. Walker he shot the victim after the victim "pulled a gun on him." (ECF No. 11 at 6-7).

Petitioner raised this claim in his state habeas action as "Ground Eleven," via a letter received by the state court on November 28, 2016. The mailing included two hand-written pages stating the claim for relief, and the enclosed letter stated the pages were "a supplement and separate ground to be filed with the grounds previously filed in the above-named and numbered cause." (ECF No. 9-18 at 150). The habeas trial court recommended denial of the claim on May 4, 2017, (ECF No. 9-19 at 16), stating:

> 7. An application filed under Article 11.07 must be on the form prescribed by the Court of Criminal Appeals. Tex. Rules of App. Proc. 73.1(a) (West 2016).[3] Further, the form must include all grounds for relief and set forth in summary fashion the facts supporting each ground. *Id.* Any ground not raised on the form will not be considered. *Id.* Since the Applicant submitted the eleventh ground for relief separately and not with an amended application for habeas corpus, then ground eleven will not be considered and should be dismissed.

---

[3] This Rule provides:
> (c) Contents. The applicant or petitioner must provide all information required by the form. The form must include all grounds for relief and set forth in summary fashion the facts supporting each ground. Any ground not raised on the form will not be considered. Legal citations and arguments may be made in a separate memorandum. The form must be computer-generated, typewritten, or legibly handwritten.

8

(ECF No. 9-19 at 15). The Court of Criminal Appeals denied relief in Petitioner's state habeas action without written order on the findings of the trial court.

Notwithstanding any procedural default of this claim, it may be denied on the merits, as § 2254(b)(2) authorizes the avoidance of a procedural default or procedural bar analysis in favor of a rejection on the merits. *See Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997).

Petitioner is unable to establish that this alleged failure was either unreasonably deficient performance or prejudicial to his defense. Although Petitioner's inculpatory statement to Mr. Walker was admissible, although hearsay, because it was a statement against penal interest, an exculpatory statement would not be subject to this exception to the hearsay rule. Furthermore, Petitioner offers no evidence, such as an affidavit from Mr. Walker, that Petitioner actually made this exculpatory statement to Mr. Walker. Additionally, defense counsel thoroughly and expertly challenged Mr. Walker's credibility and the reliability of his testimony on cross-examination, including completely undermining the weight of Mr. Walker's testimony that Petitioner admitted committing the crime. Because Petitioner is unable to show that counsel's performance was deficient or prejudicial, Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

## C. Admissibility of Evidence (Claim 2)

In his second claim for relief, Petitioner asserts counsel was ineffective for failing to "adequately and/or properly object to the admissibility of the State's Exhibits," i.e., receipts from the convenience store cash register indicating the victim received nineteen dollars and change minutes before the murder. (ECF No. 11 at 6). Petitioner asserts this error was prejudicial because the testimony regarding the transaction and the receipts themselves were "the only

evidence supporting the State's [theory] that the Petitioner murdered the complainant in the course of robbing him." (ECF No. 11 at 9).

In response to this claim when presented in the state habeas action, counsel explained the convenience store receipts were business records and, accordingly, admissible. (ECF No. 9-19 at 24, 31). Additionally, as noted by counsel, counsel did object to the admission of this evidence, but the objection was overruled. (ECF No. 8-15 at 73-74). Because counsel did make an objection, Petitioner is unable to establish counsel's performance was deficient. Furthermore, the surveillance video showed the victim receiving currency in change from his purchase, substantiating that the victim had currency in his possession just prior to being killed. (ECF No. 8-15 at 45-46). Accordingly, because Petitioner is unable to show either deficient performance or prejudice arising from this alleged error, the state court's denial of this claim was not an unreasonable application of *Strickland*.

### D. Narration of the Surveillance Video (Claim 3)

Petitioner asserts counsel should have objected to the narration of the convenience store surveillance video by Officer Phelan, who he alleges had no independent knowledge of the video. (ECF No. 11 at 12). Petitioner asserted this claim in his state habeas action, and relief was denied.

In their affidavits in the state habeas matter, both of Petitioner's counsel noted there was no valid reason to object to Officer Phelan's narration of the video because the officer was present at the store at the time it was recorded and the officer personally witnessed the recorded events. Lead counsel averred the officer had "person[al] knowledge of what he described in the store security [video] or he voiced his opinions and inferences based on his presence and

observation of the video while he was present." (ECF No. 9-19 at 26-27). Co-counsel stated an objection would have been "misguided." (ECF No. 9-19 at 31-32). The state habeas trial court found counsels' affidavits truthful and credible, and concluded counsel's performance was not deficient or prejudicial.

Because any objection to the officer's narration of the video was not meritorious and counsel's performance is not deficient or prejudicial for failing to raise a frivolous objection, *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997), the state court's denial of this ineffective assistance of counsel claim was not an unreasonable application of *Strickland*.

**E. Sufficiency of the Evidence (Claim 4)**

Petitioner asserts he was denied effective assistance of counsel because his appellate counsel failed to raise a claim regarding the sufficiency of the evidence. (ECF No. 11 at 12). Petitioner raised this claim in his state habeas action and relief was denied.

Petitioner's appellate counsel filed an affidavit in the state habeas action thoroughly explaining why he chose to pursue some issues on appeal and declined to present other issues. (ECF No. 9-19 at 37-38, 41, 44, 46). Counsel stated: "I did not raise sufficiency of the evidence in general because I believe the evidence, although contested, was sufficient to support the conviction;" and further stated: "[t]he evidence presented during the trial was legally sufficient to identify Mr. Hunt as the perpetrator of the offense and to support the allegation that he was in the course of committing robbery." (ECF No. 9-19 at 41, 44). The state habeas court found the affidavit of appellate counsel truthful and credible. (ECF No. 9-19 at 13).

To succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show that his counsel's performance was "deficient," i.e., objectively unreasonable. *Smith v.*

*Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). The petitioner must also demonstrate prejudice arising from the deficient performance. To establish prejudice, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to assert a particular claim on appeal, he would have prevailed in the appeal. *Smith*, 528 U.S. at 286; *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006).

Petitioner has not shown appellate counsel's performance was deficient, nor has he shown he would have prevailed on a claim that there was insufficient evidence to support his conviction. A thorough review of the trial transcript in this matter indicates there was sufficient evidence from which the jury could reasonably find Petitioner guilty of capital murder. Accordingly, the state court's denial of Petitioner's claim that his appellate counsel erred by failing to assert there was insufficient evidence to support his conviction was not an unreasonable application of *Strickland* and *Robbins*.

### IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (citing 28 U.S.C. § 2253(c)(1) ). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to

proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted). A district court may deny a COA sua sponte without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Derrick Hunt's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 11) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

SIGNED this 21st day of May, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE